IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DOUGLAS A. DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-288 (MN) |
| | ) | |
| VANTAGE CORPORATION, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Catherine A. Gaul, Aaron P. Sayers, ASHBY & GEDDES, Wilmington, DE; Raymond L. Moss, Michael P. Gilmore, MOSS & GILMORE LLP – attorneys for Plaintiff

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE; J. Allen Maines, Gregory J. Digel, Caroline Johnson Tanner, HOLLAND & KNIGHT LLP, Atlanta, GA – attorneys for Defendants Brian Askew and Gerald Finegold

March 26, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Douglas A. Duncan ("Plaintiff" or "Duncan") filed this action on February 20, 2018 (D.I. 1) alleging that Defendants Vantage Corporation ("Vantage"), Vantage Advisory Management, LLC ("VAM"), VF(X) LP ("VF(X)" or "VF(X) LP"),[1] Tradelogix, LLC ("Tradelogix"), Brian Askew ("Askew"), and Gerald Finegold ("Finegold") (collectively, "Defendants") alleging violation of 15 U.S.C. § 77l for the sale of unregistered and non-exempt securities (Count 1); Violation of O.C.G.A. § 10-5-20 for the sale of unregistered and non-exempt securities (Count 2); Violation of O.C.G.A. § 10-5-31 (Count 3); Violation of 15 U.S.C. § 77l(a)(2) for misrepresentations in connection with issuance of a security (Count 4); violation of §10b-5 of the Securities and Exchange Act of 1934 and Rule 10b-5 (Securities Fraud) (Count 8); Violation of O.C.G.A. § 10-5-50 et. seq. (securities fraud) (Count 9); and common law claims for breach of fiduciary duty, negligence, accounting and fraud (Counts 5-7 and 10). On March 21, 2018, Defendants moved to dismiss the Complaint. (D.I. 11). In response, on April 11, 2018, Plaintiff filed his First Amended Complaint ("Amended Complaint"), adding certain factual allegations, removing former Count 1, and reasserting the other Counts (now numbered as 1 through 9, instead of 2 through 10). (D.I. 16).

On April 25, 2018, Defendants filed the present motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that the Amended Complaint fails to state a claim upon which relief can be granted. (D.I. 19). On May 7, 2018, Defendants Vantage, VAM, VF(X) LP, and Tradelogix (collectively "Debtor Defendants") filed a Suggestion of Bankruptcy (D.I. 22) stating that the Debtor Defendants had "filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy

---

[1]      In their filings, the parties use both terms for this entity.

Code") in the United States Bankruptcy Court for the Northern District of Georgia," and suggesting "[p]ursuant to Section 362(a) of the Bankruptcy Code . . . that this action be stayed effective with the bankruptcy proceeding." The bankruptcy petitions automatically stayed the proceedings against the Debtor Defendants, but not as to defendants Askew and Finegold ("the Individual Defendants"). While the Individual Defendants state in a footnote in their Reply Brief (D.I. 25 at 1, n.1) that they "believe the stay should extend to all Defendants in this case," they have not provided the Court with any basis to stay the case beyond the Debtor Defendants. The Court, thus, declines to do so and considers Defendants' motion to dismiss as to the Individual Defendants only. For the reasons set forth below, the motion to dismiss the Amended Complaint as to the Individual Defendants is GRANTED-in-part and DENIED-in-part.[2]

## I.    __BACKGROUND__

Individual Defendants Askew and Finegold are citizens of the State of Georgia. (D.I. 16 ¶¶ 6-7). According to the Amended Complaint, "Askew is an officer of Vantage Corporation and also serves as a director on Vantage Corporation's Board of Directors" while "Finegold is the President of Vantage Corporation and serves as a director on Vantage Corporation's Board of Directors." (*Id.*). Vantage is a Delaware corporation with a principal place of business in Alpharetta, Georgia. (*Id.* ¶ 2). "VF(X) LP is a Delaware limited partnership" and a subsidiary of Vantage. (*Id.* ¶ 4). It was formed on February 19, 2016. (*Id.* ¶ 12).

The Amended Complaint alleges that Askew met with Plaintiff in Georgia and communicated through mail, email, text messages, and the telephone to solicit investments in

---

[2]    The pleading at issue is Plaintiff's Amended Complaint. The Court notes, however, that Plaintiff has not had the benefit of the Court's analysis in his attempts to address shortcomings in his pleadings. To the extent that any claims are dismissed, those claims are dismissed without prejudice.

Vantage and VF(X) LP. (*Id.* ¶¶ 13-14). In February of 2016, "Plaintiff purchased 476.962702 Class A shares in Vantage" for $1,000,000 and in August of that year invested $3,000,000 in VF(X) LP. (*Id.* ¶¶ 15-16). The Amended Complaint alleges that "Plaintiff made these investments and purchased Vantage Corporation stock and VF(X) LP interests as a result of direct misrepresentations and omissions made to him by Askew and others acting on behalf of Askew, Vantage Corporation and/or VF(X) LP." (*Id.* ¶ 17). Plaintiff further alleges that at the time of these communications, Askew was acting on behalf of Vantage and its subsidiaries, was within the scope of his positions therein, was authorized to act on behalf of Vantage and its subsidiaries, and "received direct or indirect compensation for his role in soliciting investments in Vantage Corporation and VF(X) LP." (*Id.* ¶¶ 18-19). As to Finegold, Plaintiff contends that he "was (i) a director, officer and/or control person of Vantage Corporation, (ii) a manager and/or control person of Vantage Advisory Management LLC, the general partner of VF(X) LP, and/or (iii) a control person of Askew under Section 15 of the 1933 Act, 15 U.S.C. § 77o and the Georgia Securities Act, Ga. Code Ann. §10-5-58(d) – (g)." (*Id.* ¶ 20)

Plaintiff alleges the stock in Vantage and interests in VF(X) LP are each a "security" as defined in the Securities Act of 1933, 15 U.S.C. § 77b and the Georgia Securities Act, Ga. Code Ann. §10-5-2 and were neither registered with, nor exempt from, registration pursuant to the Federal or Georgia securities acts. (*Id.* ¶¶ 21-22). Plaintiff further alleges that, at the time of the offering, "Askew was not registered as a securities salesperson or an investment advisor" in Georgia. (*Id.* ¶ 24). Additionally, the Amended Complaint states that "[b]efore Plaintiff purchased Vantage Corporation stock, Askew assured Plaintiff that 70% of his investment was to be placed in a segregated account for the benefit of each investor" and "[b]efore Plaintiff subscribed $3,000,000 to obtain VF(X) LP interests, Askew . . . assured Plaintiff that they had already

successfully raised significant funds for VF(X) LP and that there were other limited partners" but in reality "Plaintiff's investment represented over 70% of the limited partnership interests, which Plaintiff did not learn until he received his K-1 after March 21, 2017." (*Id.* ¶¶ 26-27).

In February 2016, Plaintiff alleges that he received an email written by Askew outlining Vantage's equity gains since inception and stating "[f]orget about all the other opportunity that comes from all the other areas. When you know the market and really know how to trade . . . the opportunity to exploit it and profit is enormous. Imagine the profits over the next 20 years. It should be a no brainer." (*Id.* ¶ 28). Plaintiff contends that he relied "on these representations and other oral and written representations made by Askew regarding their past investment performance and investor returns" when deciding to purchase Vantage stock and VF(X) LP interests. (*Id.* ¶ 29). Moreover, the Amended Complaint alleges that Askew represented that "Vantage Corporation was raising funds for a general partnership structure," "[Plaintiff] would become a general partner of a Vantage Corporation related entity," "Vantage Corporation's systems and strategies had reached a level of maturity and stability to invest significantly large amounts of capital," and "Vantage Corporation held 100% ownership of all the proprietary software and systems and intellectual property needed for its business model." (*Id.* ¶¶ 32-33, 37). Plaintiff contends that "Askew knowingly made these false representations to induce Plaintiff's investment and to convince him not to sell his investment," and that Plaintiff bought and held those investments in reliance thereon. (*Id.* ¶¶ 38-39).

The Amended Complaint alleges that Plaintiff's funds were never placed into segregated accounts, he never became a general partner of a Vantage related entity, and Vantage "did not own the purported proprietary software and system or intellectual property needed for the business model presented to Plaintiff," but instead relied upon software owned by a company called

TradeVue, LCC ("TradeVue"), whose "sole and managing member" is Askew. (*Id.* ¶¶ 31, 36, 39-40). Plaintiff alleges that, after he made his investment, Vantage purchased the software and intellectual property from TradeVue for $2,447,853, which resulted in "Askew receiv[ing] all or a significant portion of the[] funds.'" (*Id.* ¶ 41). Plaintiff alleges that he "has made multiple inquiries to understand the sources and uses of his investment" but "Vantage Corporation and Askew have refused to supply [him] with information regarding the use of his investment in Vantage Corporation." (*Id.* ¶¶ 42-43). Plaintiff contends that despite his reasonable diligence, he "did not discover Defendants' misrepresentations until after February 20, 2017." (*Id.* ¶ 43). The Amended Complaint alleges that on June 23, 2017, following the discovery of Defendants' misrepresentations, Plaintiff sent a letter to Askew revoking his entire interest in VF(X) LP and subsequently received two payments totaling $2,854,368.37. (*Id.* ¶ 44). The Amended Complaint contends that Plaintiff "has already tendered his VF(X) LP interests" and with the Amended Complaint "tenders back his Vantage Corporation stock to Defendants." (*Id.* ¶ 46).

## II.    <u>LEGAL STANDARD</u>

A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (citing *Conley v. Gibson* 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2)). When dismissal is sought under Rule 12(b)(6), the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Further, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotations omitted).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The court may grant a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. <u>DISCUSSION</u>

The motion to dismiss argues that the Amended Complaint: (1) fails to state a claim against Finegold; (2) fails to state a claim under Section 12 of the Securities Act of 1933; (3) fails to state a claim under the Georgia Securities Act; (4) fails to state a claim for breach of fiduciary duty; (5) fails to state a claim for negligence; (6) fails to plead federal securities fraud claim with the requisite scienter; (7) fails to plead state and common law fraud claims with specificity as required by Fed. R. Civ. P 9(b); (8) improperly pleads an accounting; and finally that (9) to the extent that

the Court dismisses the federal law claims, it should not exercise supplemental jurisdiction over the state law claims.

## A.    **Defendant Finegold**

The Individual Defendants argue that Finegold must be dismissed because the Amended Complaint "contains no factual allegations that connect Finegold to Plaintiff's claims" and "sets forth zero facts to support Plaintiff's claim that . . . Finegold [is] liable for Askew's alleged actions under the doctrine of respondeat superior." (D.I. 20 at 6-7). Plaintiff counters that the Amended Complaint sufficiently alleges that Feingold "either (i) participated in the acts, (ii) is a control person with respect to Askew, and/or (iii) is responsible for Askew's conduct under the doctrine of *respondeat superior*. *See* Am. Compl. ¶¶ 3, 4, 7, 19, 20, 25, 52, 59, 67, 76, 85, 102, 113, 122." (D.I. 24 at 6).

Finegold is mentioned in five paragraphs of the Amended Complaint, which are set out in full below:

> 3.    Vantage Advisory Management LLC is a Delaware limited liability company. According to the Confidential Private Offering Memorandum for VF(X), LP, Brian Askew and Gerald Finegold are the sole owners of Vantage Advisory Management, LLC and thus control Vantage Advisory Management, LLC. Upon information and belief, Vantage Advisory Management, LLC was formed as the investment advisor firm for Vantage Corporation's asset management division.

> 7.    Gerald Finegold ("Finegold") is a citizen of the State of Georgia. Upon information and belief, Finegold is the President of Vantage Corporation and serves as a director on Vantage Corporation's Board of Directors.

> 20.    Upon information and belief, at the time that Askew offered for sale and sold Plaintiff the Vantage Corporation stock and VF(X) LP interests, Gerald Finegold was (i) a director, officer and/or control person of Vantage Corporation, (ii) a manager and/or control person of Vantage Advisory Management LLC, the general partner of VF(X) LP, and/or (iii) a control person of Askew under Section 15 of the 1933 Act, 15 U.S.C. § 77o and the Georgia Securities Act, O.C.G.A. § 10-5-58 (d)–(g).

> 25.    Based upon information from the public records of Broker Check maintained by the Financial Industry Regulatory Authority ("FINRA"), Askew and

Finegold were experienced in the investment advisory and securities business and until 2003 had been previously registered as principals and 50-50 co-owners of a Georgia based broker-dealer registered with the U.S. Securities & Exchange Commission ("SEC") and FINRA known as Quantum Trading. Askew and Feingold claim to have been in the securities business and worked together as registered brokers and securities salesmen at now defunct Bear Stearns prior to 2002. Finegold and Askew claim to have been partners since 1992 in running their own hedge fund, broker dealer and electronic trading firm. Askew claims to have been, since 2002, exclusively focused on designing, developing and actively trading proprietary fully automated arbitrage and algorithmic systems to exploit the benefit and advantages of advanced technology.

52.     Vantage Advisory Management LLC, Tradelogix LLC and Finegold are liable to Plaintiff for the acts of Askew because they participated in these acts, because of the doctrine of respondeat superior and/or because each was a control person with respect to Askew.

As the above-paragraphs show, the Amended Complaint fails to plead that Finegold directly participated in any of the complained of acts. Other than the conclusory assertion that Finegold (along with VAM, Tradelogix) "participated in these acts," (¶ 52), there are no well-pleaded facts regarding Finegold's involvement in any of the alleged conduct.

As to *respondeat superior*, except for narrow exceptions, *respondeat superior* "should not be used to impose vicarious liability under the securities laws." *In re Catanella & E.F. Hutton & Co., Inc. Sec. Litig.*, 583 F. Supp. 1388, 1420 (E.D. Pa. 1984) (citing *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880, 885-86 (3d Cir. 1975)). Plaintiff asserts that the *Canatella* court acknowledged an exception to this rule for broker-dealers, which it asserts raises "a stringent duty to supervise employees," and then points to allegations in the Amended Complaint that Finegold is the President of Vantage and a broker-dealer with Askew. (D.I. 24 at 7). In *Canatella*, however, the district court found the broker-dealer exception was inapposite absent a showing that the alleged wrongdoer is an employee of the defendant pursued via *respondeat superior*. 583 F. Supp

at 1420.  The Amended Complaint makes no allegations that Askew is the employee of Finegold,[3] and the Court finds that Plaintiff has not made a plausible showing that the narrow broker-dealer exception applies.

Finally, with respect to Plaintiff's assertion that Finegold "is a control person with respect to Askew" (D.I. 24 at 6), "[t]o state a claim for control person liability under Section 15 of the Securities Act, the plaintiff must allege (1) a primary violation of the federal securities laws by a controlled person or entity; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful way a culpable participant in the primary violation." *Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171, 178 (D. Del. 2010) (citing *In re Reliance Sec. Litig.*, 91 F.Supp.2d 706, 731 (D. Del. 2000)).  In *Dutton*, the district court found that the first element is sufficiently met with "[a]dequate pleading of a primary Section 11 or 12 violation," while the second and third elements are met by factual allegations supporting "a reasonable inference that defendants had the potential to influence and direct the activities of the primary violator."  *Id.* (citing *Tracinda Corp. v. DaimlerChrysler AG*, 197 F.Supp.2d 42, 72 (D. Del. 2002)) (noting control person liability under Section 20 of the Exchange Act involves allegations of underlying securities violations under Section 10(b)).

As discussed *infra*, the Court finds that the Plaintiff has failed to sufficiently plead underlying securities violations under Section 12 but has sufficiently pleaded violations under Section 10(b).  With respect to the remaining elements of control person liability, the Amended Complaint alleges that Finegold the President of Vantage, serves as a director on the corporation's Board of Directors, and is a co-owner of VAM, which "was formed as the investment advisor firm

---

[3]     To the contrary, Plaintiff describes the Finegold-Askew relationship as a "partnership."  *See e.g.* D.I. 24 at 6

for Vantage Corporation's asset management division." (D.I. 16 ¶¶ 3, 7). Moreover, the Amended Complaint alleges that VAM is the general partner of VF(X) LP, another subsidiary of Vantage. (*Id.* ¶ 4). Plaintiff further alleges that Askew's conduct was "on behalf of Vantage Corporation and VF(X) LP." (*See e.g. Id.* ¶¶ 13-14). Lastly, the Amended Complaint states that "Finegold and Askew claim to have been partners since 1992 in running their own hedge fund, broker dealer and electronic trading firm." (*Id.* ¶ 25). In essence, Plaintiff alleges that Finegold is the President of Vantage, serves as a director of Vantage's Board of Directors, owns a share of VAM, and has a "long" history with Askew. Even if accepted as true, however, this is not sufficient to allege viable control person liability as it does not raise a reasonable inference that Finegold had the potential to influence and direct the activities of Askew. *See Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) ("A plaintiff may not allege 'controlling person' status merely by reciting a corporate officer's title without alleging actual control and the nature of the controlling person's 'culpable participation' in the fraud."); *Pub. Emps. Ret. Sys. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) ("[M]ere allegations of a corporate affiliation between defendants are insufficient to indicate control by one over another.").[4]

The Court thus agrees that the Amended Complaint fails to state a claim as to Finegold and the claims against him are dismissed.

## B.     Federal Claims (Counts III & VII)

The Individual Defendants argue that the Amended Complaint's federal securities claims, Counts III and VII, must be dismissed for failure to state a claim. (D.I. 20 at 8, 16-17).

---

[4]     So too, Plaintiff's conclusory allegation that Finegold is a "control person" of Vantage, VAM, *and Askew* fails to articulate a claim for control person liability. *Allen v. DeBello*, 861 F.3d 433, 437-38 (3d Cir. 2017) (holding that when a "case comes to us upon a Rule 12(b)(6) motion to dismiss . . . we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements.").

Specifically, they contend that Count III is barred by the applicable statute of limitations and fails to establish that misrepresentations were made in connection to a public offering and that Count VII fails to plead the necessary element of scienter.

### 1. Count III (Violation of Section 12 of the 1933 Act, 15 U.S.C. § 77*l*(a)(2))

The Amended Complaint alleges that Individual Defendants violated Section 12(a)(2) of the 1933 Act, 15 U.S.C. § 77l(a)(2)) when "Askew made misleading statements of material fact or omissions in a prospectus or oral communications" to Plaintiff in connection with his investments in Vantage and VF(X) LP. (D.I. 16 ¶¶ 62-63). An action under § 77l(a)(2) must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence," and within a maximum of "three years after the sale." 15 U.S.C. § 77m. "[I]n a Securities Act suit, . . . '[a] statute of limitations defense is an affirmative one, and in order to undergird a dismissal, must appear on the face of the complaint." *Pension Tr. Fund for Operating Engineers v. Mortg. Asset Securitization Transactions, Inc*., 730 F.3d 263, 271 (3d Cir. 2013) ("*Operating Engineers*") (citing *Benak v. Alliance Capital Mgmt. L.P*., 435 F.3d 396, 400 n. 14 (3d Cir.2006)).

Here, the Amended Complaint pleads that "Plaintiff did not discover Defendants' misrepresentations until after February 20, 2017." (D.I. 16 ¶ 43). Individual Defendants challenge the date of discovery alleged because it "does not explain how, in fact, such discovery was made, or when exactly it was made" and lacks "fact-based explanation for why it took Plaintiff so long to discover the alleged misrepresentation. (D.I. 20 at 9). The Individual Defendants rely on *Hill v. Der* for the proposition that a complaint must include specific pleading of the time and circumstances of discovery, reasons for any delay, and efforts taken to seek discovery. 521 F. Supp. 1370, 1389 (D. Del 1981). The Third Circuit in *Operating Engineers*, however,

stated that "requiring a plaintiff to plead compliance with a statute of limitations would effectively ensure that a timeliness issue would always appear on the face of a complaint, thereby shifting the burden to the plaintiff and negate the applicability of the affirmative defense" and thus held that "a Securities Act plaintiff need not plead compliance" in its complaint. 730 F.3d at 271. Here, Plaintiff has pleaded that the discovery was made within one year of the filing of this action and the statute of limitations defense does not otherwise appear on the face of the complaint. Thus, the Court finds that the action is not barred by the limitations period set forth in 15 U.S.C. § 77m.

Separately, Defendants argue Count III fails to state a claim because the Amended Complaint does not "show that the misrepresentation was made with respect to a public offering." (D.I. 20 at 10). Section 12(a)(2) states, in pertinent part, that any person who:

> offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, ***by means of a prospectus or oral communication***, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
>
> shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

15 U.S.C. § 77*l*(a)(2). The Supreme Court has held that Section 12(a)(2) does not apply to misrepresentations made as part of a private securities sale. *Gustafson v. Alloyd Co.,* 513 U.S. 561, 582 (1995) ("we cannot conclude that Congress would have extended liability to every private or secondary sale without a whisper of explanation."); *Yung v. Lee*, 432 F.3d 142, 149 (2d Cir.

2005) ("Section 12(a)(2) liability cannot attach unless there is an 'obligation to distribute a prospectus,' and there is no 'obligation' to distribute a document that describes a public offering to a private purchaser.").

In *Gustafson* the Supreme Court held that "the word 'prospectus' is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholders," and where documents showed that "[t]he contract of sale and its recitations, were not held out to the public and were not a prospectus as the term is used in the 1933 Act" there was no public offering. *Id.* at 584. Here, Plaintiff does not mention a prospectus or allege that one was distributed. Moreover, the documents relating to the transactions indicate that purchase of stocks and interest in VF(X) were not held out to the public.

The Individual Defendants rely on three documents appended to their motion to dismiss: the Stock Subscription Agreement, the Stock Term Sheet, and the VFX LP Subscription Agreement. (D.I. 20, Exs. A, B, C). Individual Defendants ask the Court to consider these documents despite the fact that they were not appended to the Amended Complaint because they are authentic documents upon which the complainant's claims are based. (D.I. 20 at 10). Plaintiff does not dispute the authenticity of these documents (or even address them) and the Court is convinced that the claims of the Amended Complaint rely on them. (*E.g.*, D.I. 16 ¶¶ 15-16). Thus, the Court considers the documents.

In *Yung*, the Court reviewed subscription and letter agreements regarding a sale and found that the express terms indicated the sale was not a public offering and thus claims under Section 12(a)(2) were properly dismissed. *Id.* So too here, the contractual documents supplied by the Individual Defendants show that the sale of Vantage stock and VF(X) LP interests were part of a private – not a public – sale. The Stock Subscription Agreement, signed by Plaintiff, indicates that

the shares were unregistered, that Plaintiff was "purchasing the Shares for the [Plaintiff's] own account for investment purposes and not with a view towards the sale or distribution of all or any part of the Shares" and agreed not to sell or distribute his shares absent limited circumstances, and that Plaintiff understands "there can be no assurance . . . that a public market for the Shares will develop." (D.I. 20, Ex. A at 1). Additionally, the Stock Term Sheet indicates that "[s]hares are being offered only to accredited investors as defined under the [SEC's] Regulation D," and "Investors shall be entitled to 'piggyback' registration rights on the registration by the Company of its shares in a qualified underwritten initial public offering." (D.I. 20, Ex. B at 1). Taken as a whole, the situation here is analogous to *Yung* and leads the Court to a finding that the express terms of the Stock Subscription Agreement and Stock Term Sheet indicate that the sale to Plaintiff was not a public offering and thus the Amended Complaint's claims under Section 12(a)(2) must be dismissed.

### 2. Count VII (violation of section 10b-5 of the securities and exchange act of 1934 and rule 10b-5 (securities fraud))

Count VII of the Amended Complaint asserts a violation of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5(b). (D.I. 16 ¶ 93). Section 10(b) provides that it is unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b–5 provides that it is unlawful for a person "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b). "Together, these provisions establish a private

right of action for plaintiffs to recover for false or misleading statements or omissions of material fact." *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 871 (3d Cir. 2000) (citation omitted).

To allege a claim of federal securities fraud, a plaintiff must show that a defendant "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which [plaintiff] relied; and (5) that [plaintiff's] reliance was the proximate cause of [his] injury." *EP Medsystems, Inc.* 235 F.3d at 871. The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u, applies a heightened pleading standard for federal securities fraud claims requiring that a plaintiff "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

The Individual Defendants challenge only whether Plaintiff has adequately pleaded scienter. With respect to scienter, "the complaint shall, with respect to each act or omission alleged . . ., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A "strong inference" can be pleaded with facts that show defendants had motive and opportunity to commit fraud or that show strong circumstantial evidence of conscious misbehavior or recklessness. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004). In *GSC Partners*, the Third Circuit found a strong inference of scienter where plaintiffs "assert a concrete and personal benefit to the individual defendants resulting from this fraud." *Id.* (citing *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir.2001)). Here, the Amended Complaint alleges that Individual Defendants omitted the material facts that the technology and intellectual property relied upon was not owned by Vantage or VF(X) LP but instead by a third-party wholly owned and operated by Askew and that after

Plaintiff's investments in Vantage and VF(X) LP, the technology and intellectual property was purchased for a substantial sum. (D.I. 16 ¶¶40-41). The Court finds that these factual allegations assert concrete and personal benefit to Askew in connection with the fraud and are sufficient to meet the heightened standards of the PSRLA.

## C. Georgia Securities Law Claims (Counts I, II, & VIII)[5]

The Individual Defendants argue that the Amended Complaint's claims that Askew and Finegold "violated Georgia's Uniform Securities Act of 2008 by offering and selling unregistered securities by an unregistered agent (Askew)," fail to state a claim upon which relief may be granted and the claim of securities fraud under Georgia law fails to meet the heightened pleading standard of Fed. R. Civ. P 9(b). (D.I. 20 11, 18-19).

### 1. Count 1 (violation of Ga. Code Ann. § 10-5-20 for the sale of unregistered and non-exempt securities)

Section 10-5-20 of the Georgia Code provides "[i]t is unlawful for a person to offer or sell a security in [Georgia] unless: (1) the security is a federally covered security; (2) the security, transaction, or offer is exempted from registration under Code Sections 10-5-10 through 10-5-12, or (3) the security is registered under [The Georgia Securities Act]." Ga. Code Ann. § 10-5-20. The Individual Defendants admit that "[t]he Vantage stock and VF(X) interest purchased by Plaintiff were not registered under any applicable federal or state law," but argue that "Plaintiff's allegations that the securities at issue were not exempted from registration is unsupported by any factual allegation." (D.I. 20 at 12). Individual Defendants, as "the party claiming exemption bear[] the burden of proving that the exemption applies." *S.E.C. v. Parnes*, 2001 WL 1658275, at *6 (S.D.N.Y. Dec. 25, 2001).

---

[5] The Amended Complaint has sufficiently pleaded a claim for relief under federal securities laws. Thus, the Court will exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the state law and common law claims.

The Amended Complaint alleges that when Vantage sought investors, "Askew, on behalf of Vantage Corporation, made general solicitations to obtain investor funding, including, upon information and belief, soliciting and/or selling to unaccredited investors." (D.I. 16 ¶ 11). The Individual Defendants contend that this pleading is insufficient in light of the Stock Agreement, Term Sheet, and VF(X) Subscription Agreement "which make clear the Vantage stock offering and VF(X) offering were private sales and were only being made to accredited investors, and that Vantage and VF(X) were relying on Regulation D exemption." (D.I. 20 at 12). Defendants have not, however, shown or explained how any of the exemptions stated in § 10-5-11 apply. Moreover, at this stage, Plaintiff has pleaded, on information and belief, that securities were solicited and/or sold to unaccredited investors, which would not exempt Individual Defendants from § 10-5-20. Taking these allegations as true, the Court will deny the motion to dismiss Count I.

### 2. Count II (violation of Ga. Code Ann. § 10-5-31)

Section 10-5-31(a) states "[i]t is unlawful for an individual to transact business in [Georgia] as an agent unless the individual is registered under this chapter as an agent or is exempt from registration as an agent under subsection (b) of this Code section." Ga. Code Ann. § 10-5-31(a). Subsection (b), in pertinent part, exempts "[a]n individual who represents an issuer with respect to an offer or sale of the issuer's own securities or those of the issuer's parent or any of the issuer's subsidiaries and who is not compensated in connection with the individuals participation by the payment of commissions or other remuneration based, directly or indirectly, on transactions in those securities." Ga. Code Ann. § 10-5-31(b)(3).

Count II states that "Askew was not registered as a securities salesperson or investment advisor with the Georgia Commissioner of Securities," and that "[u]pon information a belief, Askew received direct or indirect compensation for his role in soliciting investments in Vantage

Corporation and VF(X) LP." (D.I. 16 ¶¶ 54, 56). Plaintiff's factual allegation that Askew received compensation for his role as an agent is bolstered by additional allegations that Vantage later paid TradeVue, LLC, the entity whose sole member was Askew, a total of $2,447,853. (*See* D.I. 16 ¶¶ 40-41). Taken together, these alleged facts state a plausible claim that for violation of § 10-5-31.

### 3.  Count VIII (violation of Ga. Code Ann. § 10-5-50 (securities fraud))

Section 10-5-50 states "[i]t is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly: (1) to employ a device, scheme, or artifice to defraud; (2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading; or (3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person." Ga. Code Ann. § 10-5-50.

Rule 9(b) states that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Individual Defendants argue the Amended Complaint fails to meet the requirements of Rule 9(b) because it "provides no particularity as to what the representations were, where they were made, and when they were made." (D.I. 20 at 19). Rule 9(b), however, "falls short of requiring every material detail of the fraud such as date, location, and time" but requires "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (internal quotations omitted) (citing *In re Nice Systems, Ltd. Securities Litigation*, 135 F.Supp.2d 551, 577 (D.N.J.2001)).

Here, the Amended Complaint alleges a number of assurances made by Askew to Plaintiff leading up to Plaintiff's purchase of Vantage stock and investment in VF(X) LP. This includes a

February 8, 2016 email written by Askew and forwarded by a Matthew Dwyer that identified Vantage's equity gains and explained "[w]hen you know the market and really how to trade . . . the opportunity to exploit it and profit is enormous" and other representations constituting false statements or omissions. (D.I. 16 ¶¶ 26-41). Plaintiff has also alleged that he relied on the statements by Askew in making the purchases and investments at issue and would not have made those absent those statements. The Court finds that Plaintiff has provided sufficient precision to present with particularity the circumstances constituting the fraud under Ga. Code Ann. § 10-5-50.

### D.    Common Law Claims (Counts IV, V, VI, & IX)

#### 1.    Count IV (breach of fiduciary duty)

The Individual Defendants argue that Count IV, alleging a breach of fiduciary duty, "should be dismissed because it is vague and fails to satisfy the basic pleading requirements." (D.I. 20 at 13). Under Delaware law, a corporation's officers and directors stand in a fiduciary relationship with both the stockholders and the corporation itself. *See Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009). This relationship creates a "triad" of duties: due care, good faith, and loyalty. *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998). The Supreme Court of Delaware has explained this "triparte fiduciary duty does not operate intermittently but is the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided." *Id.* In certain circumstances, Delaware courts have found that "directors who knowingly disseminate false information that results in . . . damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances." *Id.* at 10, 14 (also noting "[w]hen the directors are not seeking shareholder action, but are deliberately misinforming shareholders about the business of the corporation, either directly or by a public

statement, there is a violation of fiduciary duty").  Here, the Amended Complaint alleges that Askew is an officer and director of Vantage and that in February 2016 Plaintiff became a stockholder in Vantage.  (D.I. 16 ¶¶ 6, 15).  Further, the Amended Complaint alleges that Askew made misrepresentations and omissions to Plaintiff, beginning before and continuing after the purchase of stock, and also took personal benefit by executing the purchase of technology and intellectual property from a third-party LLC solely run by Askew.  (*Id.* ¶¶ 32, 40-41).  These allegations, taken as true, state a plausible claim for relief under common law breach of fiduciary duty.

### 2.    Count V (negligence)

The Individual Defendants argue that Count V, alleging negligent conduct, must be dismissed because "there are no factual allegations establishing that Askew . . . breached any duty of care."  (D.I. 20 at 15).  Plaintiff cites to Georgia law in its papers, and Defendants cite to Delaware law, but the analysis is the same regardless.  Under Delaware law, a claim for negligence must plead: duty, breach, causation, and damages.  *Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010).  Similarly, under George law, a claim for negligence requires "duty, a breach of that duty, causation and damages."  *Traina Enterprises, Inc. v. RaceTrac Petroleum, Inc.*, 525 S.E.2d 712, 713 (Ga. Ct. App. 1999)

To survive the Rule 12(b)(6) motion, Count V of the Amended Complaint "must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a negligence claim.  *See Wilkerson*, 522 F.3d at 321.  Defendant argues that while "Plaintiff does allege that Askew made various international representations, [these] do not establish the existence of any duty" and thus Plaintiff has failed to provide sufficiently plead the first element of a negligence claim.  (D.I. 20 at 15).

Here, the Amended Complaint alleges that "Askew owed a duty of care to Plaintiff as a purchaser of the securities." (*See Id.* ¶ 78). Although, Count V refers in multiple places to other defendants breaching that duty, it does not allege that Askew breached any alleged duty of care owed to Plaintiff, or how such a breach was causally related to harm suffered by Plaintiff. Plaintiff has failed to plead each of the necessary elements for this claim, and Count V is dismissed as to Askew.

### 3.    Count VI (accounting)

The Individual Defendants argue that Count VI for an accounting must be dismissed as this equitable remedy is not an independent cause of action. It is well-established under Delaware law that "[a]n accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to either as a result." *Garza v. Citigroup Inc.*, 192 F. Supp. 3d 508, 511 (D. Del. 2016), aff'd, 724 F. App'x 95 (3d Cir. 2018), and aff'd, 724 F. App'x 95 (3d Cir. 2018) (citing *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. 762-N, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005)). The Third Circuit has found that "[a] prayer for an accounting will not, in itself, render a complaint cognizable in equity," but instead "[t]here must be some equitable ground for relief in addition to the mere demand for an account." *Kirschner v. West Company*, 300 F.2d 133, 135-36 (3d Cir. 1962) (citations omitted). Courts have repeatedly found that a request for an accounting will rise and fall with a claim for breach of fiduciary duty. *See e.g.*, *Rhodes v. Silkroad Equity, LLC*, No. 2133-VCN, 2007 WL 2058736, at *11 (Del. Ch. July 11, 2007); *Barkauskie v. Indian River Sch. Dist.*, 951 F. Supp. 519, 543 (D. Del. 1996). As discussed above, the Court has found that Plaintiff's claim for breach of fiduciary duty was sufficiently pleaded and, thus, so too is the claim for an accounting.

### 4.    Count IX (common law fraud)

The Individual Defendants argue that Count IX's common law fraud claim must be dismissed because it fails to adhere to the Rule 9(b) heightened standards of pleading fraud. (D.I. 20 at 19-20).   Under Delaware law,[6] the elements of common law fraud are: "(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induct the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance."  *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992) (citing *Stephenson v. Capano Development, Inc*., 462 A.2d 1069, 1074 (Del. 1983)).  As stated above, in accordance with Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  For the reasons discussed in relation to Plaintiff's federal and state law fraud claims, the Court finds that Plaintiff has pleaded sufficient information with respect to each of the necessary elements of common law fraud and has done so with the requisite particularity under Rule 9(b) to allow the claim to overcome the Individual Defendants' Rule 12(b)(6) challenge.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the motion to dismiss the Amended Complaint (D.I. 19) as to the Individual Defendants is GRANTED-in-part and DENIED-in-part.  An appropriate order will follow.

---

[6]    The Individual Defendants rely on Delaware law in their papers.  Plaintiff does not dispute that Delaware law applies.  To the contrary, Plaintiff relies on *Scott v. Vantage Corp.*, No. 17-448 (MPT), 2017 WL 5172399 (D. Del Nov. 8, 2017) which applied Delaware law.